2019-1669, Mr. Maloney. Thank you, Your Honor. May it please the Court, Tim Maloney for Lone Star Silicon. The determination in the final written decision that Claims 2 and 7 are unpatentable should be reversed because it was based on a ground of obviousness not set forth in Micron's petition. The evidence and rationale for invalidating those claims set forth in that final written decision deviates significantly from those set forth in the petition. And much of that evidence and much of that reasoning appeared for the very first time in Micron's reply brief at the late stage of this proceeding. This Court and the Supreme Court has confirmed that the statutory scheme for IPRs requires that the petition be guided from beginning to end, that the proceeding be guided from beginning to end by the ground set forth in the petition. And this Court has the authority to set aside. As I understand Quozo, there are certain things that are just simply unreviewable by us that the Board does at the petition institution level. And if the Board is simply interpreting the petitioner's petition to have a theory for unpatentability and it moves forward with that and institutes on that theory, then I think that's all there is to say. And that's the end of it. That's how I understand Quozo. There's another – we have case law, of course, and you've pointed out the recently issued Konaklijke case where the Board itself announces that it's going to create a brand new theory of unpatentability at the institution stage. If it concedes and acknowledges it was not raised in the petition, then of course that's a no-no and that's an example of the Board going above and beyond the bounds of the petition. But getting back to Quozo, if it's an exercise of the Board interpreting the contents of the petition to have a certain theory of unpatentability, then I don't know if that's something per Quozo that we can review. Okay, thank you, Your Honor. First of all, Quozo is limited to the issue that was raised by Quozo, which is whether or not the petition provided sufficient particularity for the Board's decision to institute the IPR proceeding to the trial stage. That is not the argument we're making here. We are not challenging the decision to institute this proceeding to the trial stage. Our position is that once instituted, the grounds addressed during trial have to be the same grounds asserted in the petition. In this case, that was not the case. In Quozo, very unique facts. As the Court is aware, the assertion of obviousness was made explicitly against a dependent claim, and the petitioner did not explicitly make that same assertion against the broader independent claim. The Board interpreted that ground to have been implicitly asserted, and that's the type of issue that— What's your understanding? I mean, you've repeated the facts of Quozo. We're familiar with that. But it cannot be that the Supreme Court's holding and principle in that opinion is limited to the specific facts of that case. The Board instituted on additional claims and the specific claim that it was petitioned for. Of course, Your Honor. What is the principle of Quozo? Something broader than the facts of Quozo. The principle of Quozo is that the Board's decisions as to whether the petition is sufficient to support the 314 determination to go forward with the trial because at least one claim, there's been a reasonable likelihood that at least one claim is invalid. That decision and issues relating to that decision, closely related, are not reviewable. That's not what we have here. The petition alleged grounds that were sufficient to at least allow this proceeding to go forward to the trial stage. However, it is very clear that with respect to the two dependent claims, the only grounds asserted in the petition were based on a particular combination of Watatani's Figure 1 embodiment, Watatani's Figure 5 embodiment, which was the supposed evidence of a multilayer silicon nitride etch dot, and Tanaka's silicon nitride film, which had a lower dielectric constant. And of course, in A105-106, the petitioner also talked about the Novellus Concept 1 tool as reported out by SST in 1987, and then on the next page it talks about the YM reference and all the good benefits and reasons why you would want to have a multilayer silicon nitride layer. Importantly, the claim here does not just require a silicon nitride layer or multiple silicon nitride layers. It requires an etch dot silicon nitride layer formed of at least two layers of silicon nitride and having this low dielectric constant. As I understand it, your preliminary response responded to these portions of the petition in A105-106 discussing the SST in 1987 and the YM reference. Is that right? Of course we responded, but the argument... I mean, to me, isn't that at least indicative that you did in fact have notice and you did have an opportunity to respond and you exercised that opportunity to respond based on this additional theory of untalkability? Your Honor, respectfully, we only responded to the arguments that were set forth regarding SST and Wang. And those arguments in particular, first of all, SST 1987 does not at all mention anything about etched-top layers. It is a much more general teaching about how a piece of equipment was available that could make multilayer structures in general. And it was never relied on to show the existence in the art of a multilayer silicon nitride etched-top layer. Wang is also the same. It is not an etched-top layer at all disclosed in Wang. It is a totally different type of layer for a totally different type of purpose. We responded in our preliminary response to the arguments that SST 1987 demonstrated a knowledge in the art that multilayer structures could be formed with some confidence that they could be formed with success. And Wang was relied on as motivation to form multilayer structures supposedly because it reduced pinholes. That was the use of those references in the petition. The Watatani Figure 5 embodiment was used to allege that it was known in the art to make multilayer silicon nitride etched-top layers. That turned out to be incorrect. The Board interpreted that figure as not disclosing that and the intervener is not challenging that. So we can see how dramatically the final written decision grounds deviates from the grounds alleged in the petition by the Board's own statements to your earlier question that in Phillips the Board acknowledged it was asserting a third ground. Here the only difference is the Board has not acknowledged that what it's done is a new ground. But it clearly is. The substance of their decision demonstrates this with respect to the etched-top layer, this multilayer silicon nitride etched-top. The final written decision again acknowledges that there was a dispute regarding whether Figure 5 of Watatani discloses that. And in the final written decision the Board says we no longer have to address that dispute. Because why? We're relying on YODA for that. YODA showed up in a reply brief, Micron's reply brief. It was not in the petition. And then in Appendix 38 the Board goes into detail about what YODA discloses and another expert declaration from FAIR interpreting that and says the Board finds that YODA discloses silicon nitride etched-tops. That was the key element that the petition relied on Watatani for. And at footnote 19 the Board says in view of this finding that the multilayer etched-top layers were known in the art, citing to YODA, it is not necessary to address the argument about what Watatani Figure 5 discloses. And in footnote 20 the Board confirmed that the result of this is it entirely changes the analysis of motivations to combine. At footnote 20 the Board says because we do not rely on Watatani to teach the multilayer silicon nitride etched-top layer, we do not need to address the argument that this feature is not disclosed by Watatani or patent donors' arguments regarding the lack of motivation and defeating the purpose of Watatani's structure. This is a concession by the Board that the grounds in the final written decision deviate so much from those set forth in the petition that it no longer needs to address the core issues that the petition raised that we challenged in our preliminary response, that Watatani Figure 5 doesn't disclose a multilayer silicon nitride etched-top. Therefore, your proposed combination makes no sense, and if you did use it, it wouldn't lead to the claimed invention because Watatani's is not two layers of silicon nitride, which is the required element of Claims 2 and 7. And moreover, our preliminary response and our full patent owner's response went into detail about why there wouldn't be a motivation to use Watatani Figure 5 in combination with its conventional Figure 1 embodiment in view of Tanaka's low dielectric fill. That was the issue raised by the petition. The petition cites to SST and to Wang, again, as evidence of knowledge of the ability to make silicon nitride as a multilayer structure, but there's nothing in SST that mentions anything about etched-top layers, and the same is true of Watatani. That wasn't an etched-top. The board acknowledged in the final written decision, I'm sorry, I think I misspoke, Wang, the board acknowledged in its final written decision that Wang does not disclose etched-top layers either. That was a misrepresentation, frankly, by Micron. So by the time we get to the final written decision, the combination is really Watatani Figure 1 with Yoda for the etched-top layers, the multi-silicon nitride etched-top layers. Tanaka's still in there, but now Tanaka's being interpreted based on Yoda, Hougan, and Notori, all three of which showed up in the reply brief. You're talking about reasonable expectation of success, right? Yes. But on what we'll just call Motivation to Combine at 839.40, the board is walking through SST and Wang, right? Yes. Wang and SST still were included in the board's analysis for Motivation to Combine. It's really a reasonable expectation of success where the board is showing up with Yoda, right? Yes. The board used Yoda for – And so – and it was using Yoda because I guess in your Pat Nona response you must have been saying that, well, even if you were to use the knowledge of the art exemplified in SST and Wang, we have no reasonable expectation of success that there would be a low enough dielectric constant in that outcome. And then on reply, that's when we have Yoda, which says, well, Yoda shows using multilayer etched-top with silicon nitride, and Yoda shows that you can get a pretty darn low dielectric constant when you do it that way. So it was, in a sense, a rebuttal to your argument, which then you got to do a SIR reply on. Is that right? I'm just trying to understand it. I heartily agree with you, but I would like to be – I'd like to add a few details. In our view, Yoda was relied on for two purposes. One, to teach the missing disclosure of a silicon nitride etched-top layer – etched-top, very important – for use in a damascene structure. That was what Figure 5 of Watatani was in the petition for, and that's the only art that was cited in the petition for that key element of the claims. Yoda was also, to your point, used as part of this new evidence of a reasonable expectation of success in taking Tanaka's low dielectric silicon nitride material and forming it as a multilayer structure, as opposed to the single layer disclosed in Tanaka, and achieving this low below 5.5 dielectric. Yoda, Kugan, and Notori were all cited in a declaration of their expert on the reply for the – supporting arguments that it was known that if you reduce the thickness of layers, it lowers the dielectric constant. And these are very technical arguments. So that's two reasons why the ground deviated. Yoda's being used not only for – If you wanted to save some rebuttal time, it's almost gone. I will, Your Honor. If I could make one point. We're not arguing that the reason for reversal is that we didn't get sufficient notice, although we do believe the notice of a seven-page surreply in response to all this new evidence was completely unfair. But our main point is the grounds were new, and the board doesn't have the authority to entertain a new grounds. Thank you, Your Honors. Mr. Kasdan, as an intervenor. Yes. May it please the court. This case, as my friend explained, involves two issues. One is the scope of the IPR, and then one is the merit. In terms of the scope, I think Judge Chen explained it correctly. These are the facts of – or these are analogous to the facts of CLOSO. The question is here is what did the petition mean when it kept talking about SST 1987's multilayer silicon nitride? And they're arguing that it didn't mean that that's where you should learn the element from, but that is what – that's a question of what the petition meant. And the Supreme Court already has said in CLOSO what the petition means is something that the board is left to decide, and this court cannot review. The distinction about which particular statutory provision was raised to challenge it I don't think is a meaningful one. I think CLOSO raised the best one because the statute says the petition needs to explain things with particularity. That's trying to tell you what needs to be in the petition. Instead, I think we're using – they're using SAS, but SAS isn't the statutory provision, but it's more a broader notion of notice, but they had the notice, as Judge Chen noted. And then it's unclear exactly even what the statutory provision is. But the challenge is the same. What did the petition mean? And the Supreme Court said that's not reviewable. Regardless – What about our recent Konam Clique versus Google opinion? So I thought – Where we did take a look at what the board did at institution, and we concluded that at least a portion of the institution was incorrectly instituted. And so we ended up repudiating that ground of rejection. So as Your Honor noted earlier, this court explained it was undisputed that – Does the PTO disagree with that case? No. I mean – Disagree with that case. Yeah. Okay. So we got that right. Yes. And the board went too far in Google Konam Clique. I mean what's confusing there is this very same reference was in there as a knowledge of the art ground, which this court accepted, and as a separate ground, which this court didn't. And the briefing makes the point that it's not so clear why that matters, except for the fact that Phillips in that case was trying to argue knowledge of the art can't be used at all. But ultimately the petition came in. But in that case it was – and this is what this court wrote – it is undisputed that Google's petition advanced only two grounds. The petition did not allege the third. So that's a SAS case where we know what the petition means. Nobody is arguing about that. And the question is can the board leave the petition? And this court said, and the Supreme Court said in SAS, no, the petition means what it means. Sorry, the petition defines the scope of the proceeding, and then you, board, cannot leave that petition. But it's not a fight about what the petition means. Here we have a fight about what the petition means. And so that's what's unreviewable, under quotation. But regardless, in this case I think there are lots of – there's good evidence that the petition actually meant to include SSD. So starting in the background, this court says it was known in the prior art – I mean, sorry, the petition says it was known in the prior art to form multilayer silicon nitride etch stop films. And the first – I'm on 81, APPX 81. This is in the background. And it starts with mentioning SST 1987, and then it goes to the Watatani, which is also a basis for learning – or one of the petition bases for learning multilayer etch stops. But it wasn't the only one. And my friend is certainly right that there were a lot of arguments that were based on the Watatani itself disclosing multilayer. And I think the next appeal will discuss that. But that wasn't the only basis Micron raised. And then going to the argument itself, the petition writes, the integrated circuit was known, multilayer circuits were known. It says it was taught in Watatani. And then it goes, such multilayer silicon nitride layers were well known in the art. Indeed, in its normal operation, the SST 1987 did just that. So that's a separate place. So even if we get to the merits, if that's reviewable, the fact is the petition did explain it. I think on point is a case that they cite, which is Ariosa, where the background section of the petition discussed a reference. I think there was Exhibit 1010. And then the board said it was unclear what the board was doing with that. But this court wrote, to the extent you're going to ignore it just because it wasn't formally laid out in the grounds, that's reversible error. So go back and tell us what you meant to do there. And that's, at best, what they have here, that there was a very long discussion of what SST 1987 meant. In terms of the merits, this seems like a standard KSR case. We have a reference that tells you that using multiple layers helps create uniformity. It helps avoid pinholes. And then it would just be obvious to apply that where you had a single layer. You might want those benefits to avoid a pinhole through which the etching chemicals could come. So it's just a standard KSR case. I don't have anything further. So I'm happy to cede back my time, although I don't want to cut off any questions. That's fine. You don't get any demerits for that. Mr. Maloney, you've got a minute and 17 seconds to chip away at the pathological petition. Thank you very much, Your Honor. I would direct the court to appendix at page 42, which is the final written decision, where the board tells us that the institution and final written decision rely on SST 1987 in the same way as it was relied on in the petition, as evidence that multilayer silicon nitride layers were known in the art. Not etched ops. There's nothing in SST having to do with etched ops. And consistent with that, as I pointed out earlier, the final written decision at appendix 38 says there is substantial evidence that it was known to use multilayer silicon nitride layers as an etched op layer in a damascene structure. That's the relevant element. And the evidence that the board cites at appendix 38 is Yoda and Dr. Fair's reply declaration regarding Yoda. So this is clear. Even though the board would not acknowledge that it had created a new ground, the substance of what it did makes that quite clear. In terms of the case law and reviewability, it can't be the case that the board can avoid reviewability by this court by simply characterizing what it's done as an interpretation of the petition. SES makes clear that CUSO does not limit. And, in fact, CUSO makes clear it does not limit this court from reviewing actions by the PTO that exceed its statutory authority. Thank you very much. Mr. Counsel, the case can be taken under advisement.